[Cite as *In re L.G.*, 2021-Ohio-744.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF L.G. AND J.G. | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case Nos. 2020-CA-00141 |
| | | 2020-CA-00142 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                              Pleas, Case Nos. 2018-JCV-1331 &
                              2018-JCV-1332


JUDGMENT:                     Affirmed


DATE OF JUDGMENT:             March 11, 2021


APPEARANCES:

For Appellant - Father                For Appellee

BERNARD L. HUNT                       BRANDON J. WALTENBAUGH
2395 McGinty Road, NW                 Stark County JFS
North Canton, OH  44720               402 2nd St SE
                                      Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}  Appellant, L.G., Jr., father of L.G. and J.G. (Father) filed this appeal from the judgment entered in Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of Father and ordered permanent custody of the minor children be granted to Stark County Department of Job and Family Services, (SCJFS).

{¶ 2}  This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follow:

FACTS AND PROCEDURAL HISTORY

{¶ 3}  On December 21, 2018, SCJFS filed complaints requesting protective supervision of and alleging dependency and neglect of five-year-old L.G. and four-year-old J.G. J.G. is afflicted with cerebral palsy and is medically fragile. The allegations contained in the complaints included medical, nutritional, and educational neglect, hygiene issues, and L.G coming to school smelling of marijuana. At the time the complaints were filed, Father was incarcerated and the children were living with mother.

{¶ 4}  An emergency shelter care hearing was held on December 26, 2018. Mother did not appear. After hearing testimony, rather than grant protective supervision, the trial court found probable cause existed for SCJFS's involvement and that continued placement in the children's home would be contrary to their health and welfare. L.G. and J.G. were therefore placed in the emergency temporary custody of SCJFS. On January 8, 2019, SCJFS filed amended complaints seeking temporary custody of the children.

{¶ 5}  On various dates between March 5 and March 19, 2019, the trial court heard evidence regarding the complaints and initial disposition of the children. Testimony

revealed J.G. was in need of leg braces, a special wheelchair, and due to difficulty swallowing, has dietary restrictions. J.G. was enrolled at Eastgate, a Stark County Board of Developmental Disabilities (Stark DD) school. Eastgate staff had concerns regarding mother's lack of involvement in J.G.'s treatment plan. J.G. frequently arrived at school dehydrated, and with his hair dirty and matted. He needed to see various specialists to address his challenges, but mother ignored attempts by Eastgate staff to get mother engaged in J.G.'s treatment plan. Stark DD therefore referred the matter to SCJFS.

{¶ 6}   L.G. was enrolled at Duber Elementary but his attendance was very poor and he had aggressive behavior issues. When L.G. did go to school, he smelled of marijuana. On one occasion the odor was so strong, school officials searched his backpack thinking he was in possession of marijuana. Attempts were made by Duber staff to mediate L.G.'s attendance issues with Mother to no avail.

{¶ 7}   On March 19, 2020 the trial court placed the children in the temporary custody of SCJFS, adopted and approved the initial case plan, found SCJFS had made reasonable efforts to finalize the permanency planning, compelling reasons existed to preclude a filing for permanent custody and ordered status quo.

{¶ 8}   The matter was reviewed on June 19, 2019. The court again approved the case plan, found reasonable efforts by SCJFS, and compelling reasons existed to preclude a filing for permanent custody.

{¶ 9}   On October 17, 2019, SCJFS filed a motion for permanent custody. The matter was set for evidence on January 28, 2020.

{¶ 10} Also in October, Father was released from prison and into a halfway house.

{¶ 11} The next review took place on November 15, 2019. The court approved and adopted the case plan, found SCJFS had made reasonable efforts to finalize permanency planning, ordered status quo and found no compelling reasons existed to preclude a filing for permanent custody.

{¶ 12} Father was released from the halfway house at the end of 2019. On January 22, 2020, he filed a motion to change legal custody of the children to himself. SCJFS case worker Kimberly Gable met with father, brought him into the case plan and asked about relative placements for the children. Father was to complete a drug assessment at CommQuest and a parenting evaluation at Lighthouse. On January 23, 2020, Father filed a motion to extend temporary custody.

{¶ 13} Gable was able to view housing where Father proposed the children would live if legal custody was transferred to him on only one occasion. Thereafter, neither Father nor his girlfriend would let Gable in the house.

{¶ 14} Father completed his CommQuest assessment and no additional services were recommended.  As for the parenting assessment, Father was diagnosed with anti-social traits and unspecified substance abuse disorder. Counseling was recommended with Melymbrosia, but Father failed to comply. He also failed to comply with Gabel's requests for random drug screens, and could not be referred to Goodwill Parenting without showing ongoing sobriety.

{¶ 15} On April 21, 2020, Father was charged with two counts of felonious assault each with attendant firearm specifications, one count of discharging a firearm on or near prohibited premises, also with a firearm specification, and one count of having weapons under disability. He was arrested on these charges on May 5, 2020.

{¶ 16} On April 17, 2020, the trial court continued all motions hearings and trial in this matter to July 22, 2020 due to the Covid-19 pandemic. The court reviewed the matter on May 14, 2020 and approved and adopted the case plan, found reasonable efforts by SCJFS and ordered status quo. The trial court further found no compelling reason to preclude the filing for permanent custody.

{¶ 17} On May 15, 2020, because the matter was approaching its second filing deadline, SCJFS filed a second motion for permanent custody, this one alleging the children could not be placed with either parent within a reasonable time and that the children had been in the temporary custody of SCJFS for 12 or more months in a consecutive 22-month period.

{¶ 18} On July 14, 2020, Robin Minor, the Guardian ad Litem for the children filed her final report recommending the children be placed in the permanent custody of SCJFS. Minor indicated the children were doing well in their foster placements and while Father had completed some directives, he had not complied with Melymbrosia services to address anger management, conflict resolution without threats of violence, nor how his lifestyle choices effect and impact his children's lives. Additionally Father was not available for unannounced home visits and had not responded to requests left with his girlfriend to contact Minor or SCJFS regarding home visits.

{¶ 19} On July 22, 2020, the trial court heard testimony on the motion for permanent custody as well as Father's motions.

{¶ 20} Commquest Administrative Supervisor Kim Fraley testified Father completed a substance abuse assessment and was not recommended for treatment.

{¶ 21} Father's parenting evaluation was conducted by Dr. Aimee Thomas. Thomas testified Father minimized or did not have insight into his children's identified needs and challenges. He did not seem to understand his children's needs were significant. Additionally, Father's criminal history and current criminal involvement presented concerns for Thomas because if Father is incarcerated he cannot be present to offer support for Mother or be present to care for the children. Thomas also had concerns regarding Father's "thinking errors" regarding conflict resolution. Thomas recommended Father participate in Goodwill Parenting classes, intensive individual counseling, and substance abuse treatment services. She additionally recommended Father demonstrate the capacity to maintain gainful employment in order to support his family financially.

{¶ 22} Gabel testified she met with Father upon his release from the halfway house at the end of 2019, explained her role and provided him with the case plan. She also asked for names for possible placement with relatives. He was directed to complete a drug assessment at CommQuest and a parenting evaluation at Lighthouse.

{¶ 23} Gabel stated Father completed his CommQuest evaluation and provided a clean drug screen at that time. CommQuest did not recommend additional services. Lighthouse recommended Father engage in mental health services at Melymbrosia, continue sobriety, and a verifiable source of income. Father also needed to obtain appropriate housing.

{¶ 24} While Father did not provide Gable documentation of employment, he testified he had been seasonally employed at Sterilite and then worked a short period at Ziegler Tire before being laid off due to the COVID-19 pandemic. As for housing, Father

and his girlfriend D.D. had not let Gable back in to the home since Father was released from the halfway house. Thus Gable was unable to determine if the housing remained appropriate. Additionally, Gabe stated while Father loves his children and verbally expresses commitment to them, he failed to substantially comply with his case plan services and failed to demonstrate a change in his conduct.

{¶ 25} Father testified on his own behalf and stated he was in prison when this case began. He testified he was unemployed and lives with his girlfriend D.D. in her home with her seven year-old daughter. He admitted he has been incarcerated three or four times and has current pending felony charges. Father testified he completed some programming while in the halfway house and met with Gable to receive his case plan with SCJFS. He stated he had not missed any visits with his children and would be committed to getting the children to their various appointments with doctors and therapists. Father did not believe permanent custody was in his children's best interests.

{¶ 26} D.D. testified she had known Father for more than 30 years and he currently lives with her and her daughter. She stated she completed the home study and would like the children to be placed in her home and would be willing to take custody of the children.[1] D.D. testified she was aware of Father's criminal history but believed he had changed.

{¶ 27} Regarding the children, Gabel testified L.G. has behavioral and emotional issues, had killed multiple animals while in SCJFS custody, and was physically aggressive with his peers. Gabel stated L.G. is in counseling and on medication. Gabel also indicated L.G. had missed a lot of school while in mother's custody, but now has an

---

[1] D.D. did not file a motion for custody.

IEP and is improving at school. She stated L.G. is bonded with his foster family but still loves his parents.

{¶ 28} Gabel testified J.G.'s cerebral palsy is severe and requires significant medical attention. Those needs are being met by his foster family. J.G. also has an IEP, has been able to transfer to a public school, and receives multiple therapies. He is doing well in foster care and is bonded with his foster family. The children were placed in separate foster homes after L.G. harmed animals and broke a foster sibling's collarbone.

{¶ 29} Gabel additionally testified relative placements for the children were explored, but none were appropriate. Gable stated permanent custody would be in the children's best interests.

{¶ 30} Minor, the children's GAL testified that although the children are bonded with Father and interacted well with them during visits, she had grave concerns about putting the children in a home where guns were present, and Father had not shown he was sober and has new pending criminal charges. Minor opined granting permanent custody to SCJFS was in the children's best interests.

{¶ 31} After taking the matter under advisement, the trial court issued findings of fact denying Father's motions, granting permanent custody of the children to SCJFS and terminated parental rights. The court found despite reasonable efforts by SCJFS the children could not be placed with Father within a reasonable time and should not be placed with Father. The court found by virtue of his incarceration Father had failed to visit the children for a period in excess of 90 days and that the children had been in the temporary custody of SCJFS for twelve or more months in a consecutive twenty-two-month period.

{¶ 32} Father filed an appeal and the matter is now before this court for consideration. He raises two assignments of error for our consideration as follow:

I

{¶ 33} "THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY TO SCJFS. THIS DENIED THE APPELLANT'S MOTION FOR A CHANGE OF LEGAL CUSTODY AND MOTION TO EXTEND TEMPORARY CUSTODY, FILED IN THIS CASE."

II

{¶ 34} "THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH THE APPELLANT FATHER AT THE TIME OF THE TRIAL OR WITHIN A REASONABLE TIME, WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶ 35} We address Father's assignments of error together as they are interrelated. In his first assignment of error, Father argues the trial court erred in denying his motions for legal custody and for an extension of temporary custody. Father appears to argue that since he was incarcerated during the pendency of this matter, he should have been granted additional time to complete his case objectives following his release. In his second assignment of error, Father argues the trial court's finding that the children could not be placed with Father and should not be placed with Father is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 36} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v.*

*Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman*, 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21

## Permanent Custody

{¶ 37} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot
> be placed with either of the child's parents within a reasonable time
> or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* *

*

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 38} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 39} R.C. 2151.414(D) governs "best interests" and states the following:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415

of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 40} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the

syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

**The Instant Matter**

{¶ 41} Here, R.C. 2151.414(B)(1)(d) applies as the children had been in the temporary custody of SCJFS in excess of twelve or more months of the consecutive twenty-two month period and Father does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

{¶ 42} Even if that were not true, while Father appears to fault the trial court for failing to grant him additional time to work his case plan due to his incarceration, we note Father failed to comply with the directives of his case plan while he still had time to do so. He failed to comply with random drug screens, failed to engage in treatment with Melymbrosia, and incurred new felony charges four months after being released from a halfway house. We therefore find no error in the trial court's decision denying Father's motion to extend time or his motion to transfer custody.

{¶ 43} We further conclude the findings of the court granting permanent custody to SCJFS are supported by clear and convincing evidence.

{¶ 44} Father's two assignments of error are overruled.

{¶ 45} The judgment of the Stark County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Delaney, J. concur.

EEW/rw